725 S.E.2d 170

**Todd BALDAU, Plaintiff below, Appellee**

v.

**Herbert JONKERS, Louis B. Athey, and Eugene Capriotti, Defendants below, Appellants.**

No. 35650.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 16, 2011.

Decided March 10, 2011.

**4**

James P. Campbell, Esq., J. Michael Cassell, Esq., Campbell Flannery, P.C., Charles Town, WV, for Appellants.

David M. Hammer, Esq., Robert J. Schiavoni, Esq., Hammer, Ferretti & Schiavoni, Martinsburg, WV, for Appellee.

PER CURIAM:

Appellants Herbert Jonkers, Louis B. Athey and Eugene Capriotti (hereinafter "defendants") are real estate developers who filed a petition to remove plaintiff/appellee Todd Baldau (hereinafter "Mr. Baldau") from the Jefferson County Planning Commission, alleging that he committed multiple acts of official misconduct and malfeasance while serving on the commission. A three judge panel appointed by this Court conducted a trial on these allegations and concluded that "[t]here is not a scintilla of evidence in this case to support any of the allegations within the Petition that the Respondent (Mr. Baldau), in the performance of any of his duties ... violated the law or his oath of office." The defendants did not appeal the three judge panel's ruling.

After this ruling, Mr. Baldau filed a malicious prosecution claim against the defendants, which resulted in a jury awarding him multiple damage awards, including $15,000 in punitive damages against each defendant, for a total punitive damage award of $45,000.

In this appeal of the jury award, the defendants assert that the trial court erred by: (1) failing to grant the defendants' cross motion for summary judgment which asserted that they were entitled to immunity pursuant to the *Noerr–Pennington* doctrine; (2) denying the defendants' motion to amend to add *Noerr–Pennington* immunity and advice of counsel defenses; (3) granting Mr. Baldau's motion for partial summary judgment based upon the ruling of the three judge panel; and (4) alleging that all of the damage awards were erroneous based on prejudicial rulings made by the trial court.

After thorough review of the briefs, the legal authority cited and the record presented for consideration, we affirm the circuit court's judgment order.

**I.**

*Facts & Background*

In 2005, plaintiff Todd Baldau volunteered to serve on the nine-member Jefferson County Planning Commission (hereinafter "planning commission"). At that time, Mr. Baldau was living in Jefferson County with his wife and two daughters and commuted to Washington D.C. where he worked as an administrator in the United States Department of Justice and Federal Bureau of Prisons. He received no compensation for serving on the planning commission and testified that he volunteered because he wanted to get involved in the community.

The three defendants are real estate developers in Jefferson County who filed a removal petition against Mr. Baldau pursuant to *W.Va.Code* § 6–6–7 [1985],[1] alleging that he committed multiple acts of official misconduct and malfeasance. The main allegation against Mr. Baldau was that he voted to deny subdivision applications that complied with Jefferson County zoning ordinances and that he "publicly threatened" a fellow planning commissioner "with political recriminations" if the commissioner voted for a zoning ordinance that Mr. Baldau was against. The removal petition also asserted that Mr. Bal-

---

1. *W.Va.Code* § 6–6–7(a) [1985] states:
   Any person holding any county, school district or municipal office, including the office of member of a board of education and the office of magistrate, the term or tenure of which office is fixed by law, whether the office be elective or appointive, except judges of the circuit courts, may be removed from such office in the manner provided in this section for official misconduct, malfeasance in office, incompetence, neglect of duty or gross immorality or for any of the causes or on any of the grounds provided by any other statute.

dau demanded that applications filed by the defendants comply with terms which were not required by county zoning ordinances.

The Circuit Court of Jefferson County dismissed this petition without prejudice on October 5, 2006.[2] The defendants subsequently filed a second removal petition against Mr. Baldau, again alleging that he committed multiple acts of official misconduct and malfeasance. While this petition included 80 signatures, the allegations were verified solely by the three defendants.[3]

In accordance with the procedure set forth in *W.Va.Code* § 6–6–7 [1985], this Court appointed a three judge panel[4] to preside over the removal petition. The three judge panel heard evidence from both sides on January 30, 2007. By order entered on August 30, 2007, the three judge panel emphatically concluded that the defendants' removal petition was unsupported by any evidence. The three judge panel stated:

> There is not a scintilla of evidence in this case to support any of the allegations within the Petition that the Respondent, in the performance of any of his duties as a member of the JCPC ... violated the law or his oath of office.
>
> Accordingly, the Court ... unanimously concludes that there is no clear and convincing evidence at all in this case which supports, to any degree, any factual or legal conclusion that the Respondent has, in any manner, in the performance of any of his duties as a member of the Jefferson County Planning Commission, committed multiple acts of official misconduct, engaged in malfeasance in office, is incompetent or has neglected any of his official duties. To the contrary, the Respondent

clearly appears to be an informed, smart and conscientious, unpaid citizen member of the Jefferson County Planning Commission.

The three judge panel also stated that Mr. Baldau "obviously acted in good faith, and within the law, as he exercised his votes," and that he voted with the majority of the nine-member commission in most instances. The panel concluded that there was no "reasonable, logical or rational explanation" presented by the defendants explaining why they singled out Mr. Baldau for removal from the nine-member commission. The defendants did not appeal the three judge panel's order.

After this ruling, Mr. Baldau filed a malicious prosecution claim against the three defendants, alleging that they brought the removal action against him "with actual malice and without reasonable or probable cause."

On October 1, 2008, Mr. Baldau filed a motion for partial summary judgment on the issue of liability, arguing that the three judge panel's order established that the defendants did not have probable cause to pursue the removal action. The defendants responded by arguing that collateral estoppel did not apply and the motion for summary judgment should be denied. They also filed an untimely[5] cross-motion for summary judgment asserting for the first time that they were immune from liability for malicious prosecution pursuant to the *Noerr–Pennington* doctrine and raising the defense of good faith reliance upon the advice of counsel. On November 19, 2008, the circuit court granted Mr. Baldau's motion for partial summary judgment, concluding that the three judge panel's order established that "the defen-

---

2. The October 5, 2006, order dismissing the first petition is not in the record and neither side addressed the exact circumstances that led to this dismissal. In the subsequent malicious prosecution case, counsel for Mr. Baldau stated that the first removal petition was dismissed because "the defendants knew that they had not followed the procedures required under the statute and the result was the case was dismissed on the spot that day."

3. Mr. Baldau states that 25 of the 80 people who signed the removal petition were not residents of Jefferson County; 20 were residents of other states; and a number of petition signers were

employees of the three defendants who had never attended a planning commission meeting during the time Mr. Baldau served on the commission.

4. This Court appointed Judge John W. Hatcher, Judge Robert Holland, and Judge David R. Janes to preside over the case.

5. The scheduling order required dispositive motions to be filed 60 days prior to the pre-trial conference, which was scheduled for December 1, 2008. The defendants filed their cross-motion for summary judgment on October 29, 2008.

dants did not have probable cause to file removal actions against Mr. Baldau and given the want of probable cause, malice is inferred."

The jury trial on Mr. Baldau's damages began on April 23, 2009. The main issue during the trial was whether the defendants acted with actual malice toward Mr. Baldau when they filed the removal petition against him. Mr. Baldau and his wife both testified and described the psychological and financial strain the removal petition put on their family. Mr. Baldau testified that this strain caused him to seek psychological counseling. Greg Corliss, the commissioner Mr. Baldau allegedly threatened during a commission meeting, testified that Mr. Baldau never made threatening comments toward him. Mr. Corliss testified that he and Mr. Baldau engaged in spirited exchanges and that Mr. Baldau was one of the best prepared members on the planning commission. Another planning commissioner, John Sidor, testified that Mr. Baldau was precise, asked good questions and never acted unprofessionally or inappropriately. Mr. Sidor testified that Mr. Baldau was the first commissioner to receive an award for his service on the commission. The jury also heard testimony from all three defendants,[6] in which they explained their purported reasons for bringing the removal action against Mr. Baldau.

The trial court determined that while the three judge panel's ruling raised an inference of malice, proof of actual malice was required to support Mr. Baldau's cause of action and ruled that the nature and extent of the malice was a jury question. The trial court instructed the jury that actual malice "is a sinister or corrupt motive such as hatred, personal spite, a desire to injure the Plaintiff or a conscious disregard of the rights of others . . . Actual malice may not be inferred but must be found by the jury."

After listening to three days of testimony and being instructed on the definition of "actual malice," the jury returned a verdict in favor of Mr. Baldau and awarded him $1,700 for out-of-pocket expenses, $1,000 for attorney fees, and $5,000 for general compensatory damages ("i.e. mental anguish, upset, annoyance and inconvenience."). The jury was also asked to answer the following special interrogatory question:

A wrongful act, done under bona fide claim of right, and without malice and in any form, constitutes no basis for Punitive Damages. Do you find the Defendants acted maliciously, wantonly, mischievously or with criminal indifference to the rights of Todd Baldau such as to justify an award of Punitive Damages?

The jury answered "yes" to this question, and both parties then called witnesses and made arguments to the jury concerning the amount of punitive damages that should be awarded. Following this phase of the trial, the jury awarded a $15,000.00 punitive damage award against each defendant, for a total award of $45,000.00.

The defendants subsequently filed post-trial motions pursuant to Rules 50 and 59(a) of the *West Virginia Rules of Civil Procedure*, which the trial court denied. In the order denying the post-trial motions, the trial court summarized the evidence presented during the malicious prosecution action as follows:

The Defendants' conduct . . . was truly reprehensible. It was an attack upon the functioning of county government to gain undue economic advantage. The Defendants singled out one volunteer member of the county's Planning Commission without any basis whatsoever for doing so (as directly admitted by Defendant Athey during his testimony at trial).

Following the trial court's order denying these post-trial motions, the defendants filed the present appeal with this Court.

## II.

### Standard of Review

Because the issues raised in the instant appeal require the application of separate and distinct standards of review, we incorporate such standards into our discussion of the issues to which they pertain.

6. Defendants Athey and Jonkers testified in person, defendant Capriotti did not attend the trial but portions of a previous deposition he gave were read to the jury.

## III.

### *Discussion*

The defendants raise four arguments in this appeal. They assert the trial court erred by: denying the defendants' motion to amend their answer to add *Noerr–Pennington* immunity and advice of counsel defenses; failing to grant the defendants' cross motion for summary judgment based on their claim of immunity pursuant to the *Noerr–Pennington* doctrine; and granting Mr. Baldau's motion for partial summary judgment based upon the ruling of the three judge panel. They also allege that all of the damage awards were erroneous and resulted from various prejudicial rulings made by the trial court.

### 1. *Noerr–Pennington*

The Defendants first two assignments of error concern the *Noerr–Pennington* doctrine. By way of background, the *Noerr–Pennington* doctrine grants First Amendment immunity from suit to those engaged in petitioning activity.[7] *See Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961) (establishing immunity for petitions to a state legislature); *United Mine Workers v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965) (extending *Noerr* immunity to petitions to public officials); *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972) (extending *Noerr–Pennington* protection to petitioning activities aimed at state and federal agencies and courts). Although initially developed in the antitrust context, courts in other jurisdictions have extended *Noerr–Pennington* to cover a variety of business torts. *Cheminor Drugs, Ltd. v. Ethyl Corp.,* 168 F.3d 119, 128–29 (3rd Cir.1999).

We addressed *Noerr–Pennington* for the first time in *Webb v. Fury,* 167 W.Va. 434, 282 S.E.2d 28 (1981). *Webb* involved a defamation action brought by a coal company against Rick Webb for sending communications to various federal agencies claiming that the coal company was in violation of surface mining and clean water laws. The Court in *Webb* examined *Noerr–Pennington* and concluded that:

> The clear import of the *Noerr–Pennington* doctrine is to immunize from legal action persons who attempt to induce the passage or enforcement of law or to solicit governmental action even though the result of such activities may indirectly cause injury to others. Such immunity is not limited to attempts to influence legislative and executive functions but extends as well to protect 'the use of administrative or judicial processes[.]' (citations omitted.)

*Webb,* 167 W.Va. at 445, 282 S.E.2d at 35.

The Court in *Webb* held that "the *Noerr–Pennington* doctrine and its application to the facts of this case leads us to conclude that the petitioners' activities involve the exercise of the right to petition" and were therefore absolutely protected. 167 W.Va. at 459, 282 S.E.2d at 43.

Four years after *Webb,* the United States Supreme Court came to a different conclusion and held that absolute immunity did not apply to the right to petition. In *McDonald v. Smith,* 472 U.S. 479, 105 S.Ct. 2787, 86 L.Ed.2d 384 (1985), the Court determined that the right to petition should be afforded the same protections afforded other First Amendment rights, such as freedom of speech and freedom of the press. *McDonald* held that "expression falling within the scope of the Petition Clause, while fully protected by the actual-malice standard set forth in *New York Times Co. v. Sullivan,*[8] is not shielded by an absolute privilege." 472 U.S. at 490, 105 S.Ct. at 2794.

After *McDonald,* this Court revisited *Noerr–Pennington* in *Harris v. Adkins,* 189

---

7. *Noerr–Pennington* immunity does not stem solely from the First Amendment's right to petition. It is also based on a statutory interpretation of the Sherman Act. *See Cardtoons, L.C. v. Major League Baseball Players Ass'n,* 208 F.3d 885, 888 (2000). The interplay between these two sources has been described as "interpreting the Sherman Act in the light of the First Amendment's Petition

Clause." *Federal Trade Comm'n v. Superior Court Trial Lawyers Ass'n,* 493 U.S. 411, 424, 110 S.Ct. 768, 107 L.Ed.2d 851 (1990).

8. 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

W.Va. 465, 432 S.E.2d 549 (1993). In *Harris,* a city councilman brought a defamation action against a citizen who read an alleged libelous statement about him at a city council meeting. The citizen argued that he had absolute immunity from this suit pursuant to our holding in *Webb.* We disagreed and, relying largely on *McDonald,* held at Syllabus Point 1:

> The right to petition the government found in Section 16 of Article III of the West Virginia Constitution is comparable to that found in the First Amendment to the United States Constitution. It does not provide an absolute privilege for intentional and reckless falsehoods, but the right is protected by the actual malice standard of *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). To the extent that *Webb v. Fury,* 167 W.Va. 434, 282 S.E.2d 28 (1981), states to the contrary, it is overruled.

Syllabus Point 1, *Harris v. Adkins, supra.*

■ With this background in mind, we turn to the defendants' argument that the circuit erred by denying their motion to amend their answer to add *Noerr–Pennington* immunity as an affirmative defense. The defendants asserted 17 affirmative defenses in their answer, but did not raise *Noerr–Pennington.* They did not move to amend their answer to add *Noerr–Pennington* until December 8, 2008, one day before the scheduled trial date.[9] The circuit court denied this motion because it was filed after partial summary judgment had been granted to Mr. Baldau and after the deadline set forth in the scheduling order.

■ We have previously held that "[a] motion to amend a pleading is addressed to the sound discretion of the trial court and such discretion will not be disturbed on appeal unless there is a showing of abuse of discretion." Syllabus Point 1, *Nellas v. Loucas,* 156 W.Va. 77, 191 S.E.2d 160 (1972).

■ The scheduling order required all amendments to be filed nine months before trial. The defendants offered no reason why they did not assert this affirmative defense in their answer or within the time frame set forth in the scheduling order. The circuit court found that allowing this amendment would require fact intensive discovery by Mr. Baldau and would delay the trial in this matter. Further, the amendment was made after partial summary judgment had been entered, and the circuit court found that "[i]n effect, the defendants are proposing to relitigate the entire case." Based on all of the above, we find that the circuit court did not abuse its discretion by denying the defendants' motion to amend to add *Noerr–Pennington* immunity as an affirmative defense.[10]

The defendants alternately argue that they were not required to plead *Noerr–Pennington* as an affirmative defense because it presumptively applies whenever petitioning activity is involved. The defendants argue that the circuit court should have granted their cross motion for summary judgment which was based on their claim of immunity pursuant to *Noerr–Pennington.*

■ In reviewing a circuit court's decision regarding summary judgment, our standard of review is *de novo.* *See* Syllabus Point 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994).[11] The application of

---

9. The trial was scheduled for December 9, 2008. Defendant Capriotti's sister died on December 3, 2008, and the trial court therefore continued the trial until April 2009.

10. The same analysis applies to the defendants' assertion that the circuit court erred by denying their motion to include advice of counsel as a defense. This defense was also asserted on December 8, 2008, the day before the scheduled trial date, and we find that the circuit court did not abuse its discretion by denying the defendants' motion to amend to include this defense.

11. *See Cottrill v. Ranson,* 200 W.Va. 691, 695, 490 S.E.2d 778, 782 (1997) ("We review a circuit court's decision to grant summary judgment de novo and apply the same standard for summary judgment that is to be followed by the circuit court.") (citing *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 58, 459 S.E.2d 329, 335 (1995)). In this regard, we have long held that "a motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963).

*Noerr–Pennington* is likewise a question of law we review *de novo*. *IGEN International, Inc. v. Roche Diagnostics GmbH*, 335 F.3d 303, 310 (4th Cir.2003).

The majority of courts who have considered whether *Noerr–Pennington* is an immunity or an affirmative defense have concluded that *Noerr* is an affirmative defense.[12] The defendants rely on *IGEN International, Inc. v. Roche Diagnostics GmbH*, 335 F.3d 303, 311 (4th Cir.2003), which hinted that *Noerr–Pennington* could apply as a rebuttable presumption rather than an affirmative defense in certain contexts, but stated "[h]owever, because it is not essential to our holding, we need not revisit that issue today." *IGEN* stated that a party pleading *Noerr–Pennington* as an affirmative defense should be allowed to assert it as long as it does so within a "pragmatically sufficient time." *IGEN*, 335 F.3d at 311. As discussed at length above, the defendants in the case *sub judice* did not assert *Noerr–Pennington* in a "pragmatically sufficient time," rather, they asserted it on the day before the scheduled trial date and after partial summary judgment had been entered against them.

In denying the defendants' motion for summary judgment, the circuit court noted that this Court has not extended *Noerr–Pennington* immunity to malicious prosecution cases. We decline to extend *Noerr* immunity to malicious prosecution actions at this time for two reasons. First, the defendants failed to plead *Noerr–Pennington* at a "pragmatically sufficient time," raising the argument in an untimely filed cross motion for summary judgment and in a motion to amend on the eve of trial. We have long held that, "[a] court of equity will not assist one who has slept upon his rights[.]" Syllabus Point 6, in part, *Holsberry v. Harris*, 56 W.Va. 320, 49 S.E. 404 (1904).

The second reason we decline to extend *Noerr–Pennington* is that the defendants have offered no reason why this case cannot be decided by following our established malicious prosecution case law. In order for Mr. Baldau to prevail in his malicious prosecution action, he was required to prove, "(1) that the prosecution was malicious, (2) that it was without reasonable or probable cause and (3) that it terminated favorably to plaintiff." Syllabus Point 1, in part, *Preiser v. MacQueen*, 177 W.Va. 273, 352 S.E.2d 22 (1985). We find that the defendants' rights were properly protected under these malicious prosecution elements and decline to extend our *Noerr–Pennington* jurisprudence at this time.

## 2. Collateral Estoppel

The defendants next argue that the circuit court erred when it granted Mr. Baldau's partial summary judgment motion based on the ruling of the three judge panel in the removal action. The defendants argue that collateral estoppel should not apply because the issue before the three judge panel was Mr. Baldau's conduct while he was a commissioner, whereas the issue in the malicious prosecution case is whether there was probable cause to bring the removal action and whether it was brought maliciously.

Collateral estoppel forecloses the relitigation of "issues that were actually litigated in an earlier suit even though the causes of action [in the former and subsequent proceedings] are different." *Mellon–Stuart Co. v. Hall*, 178 W.Va. 291, 298–99, 359 S.E.2d 124, 131–32 (1987). In *Conley v. Spillers*, 171 W.Va. 584, 301 S.E.2d 216 (1983), we discussed the policy considerations underlying collateral estoppel, including protections from multiple lawsuits, conservation of judicial resources and minimization of the possibility of inconsistent decisions.[13]

---

**12.** *See Bayou Fleet, Inc. v. Alexander*, 234 F.3d 852, 860 (5th Cir.2000); *Acoustic Systems, Inc. v. Wenger Corp.*, 207 F.3d 287 (5th Cir.2000); *We, Inc. v. City of Phila.*, 174 F.3d 322, 326 (3rd Cir.1999); *Segni v. Commercial Office of Spain*, 816 F.2d 344 345–46 (7th Cir.1987); *N.C. Elec. Membership Corp. v. Carolina Power & Light Co.*, 666 F.2d 50, 52 (4th Cir.1981).

**13.** We also discussed collateral estoppel at length in *Caperton v. A.T. Massey Coal Co., Inc.*, 225 W.Va. 128, 690 S.E.2d 322 (2009), noting that under federal law, a party asserting collateral estoppel must establish:

(1) the issue to be precluded is identical to the issue already litigated, (2) the issue was actually determined in the prior proceeding, (3) the determination of the issue was an

In Syllabus Point 1 of *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995), we held:

> Collateral estoppel will bar a claim if four conditions are met: (1) The issue previously decided is identical to the one presented in the action in question; (2) there is a final adjudication on the merits of the prior action; (3) the party against whom the doctrine is invoked was a party or in privity with a party to a prior action; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

Whether collateral estoppel applies in a particular case rests within the sound discretion of the trial court, "[t]he application of the doctrine of collateral estoppel is discretionary with the trial court[.]" Syllabus Point 7, in part, *Conley*, 171 W.Va. 584, 301 S.E.2d 216.

In the case *sub judice*, the main inquiry is whether the issue before the three judge panel was the same as the issue decided by the circuit court in the partial summary judgment motion. The three judge panel conducted a hearing on the merits to determine whether Mr. Baldau should be removed from the planning commission based on the allegations contained in the removal petition. Mr. Baldau answered approximately 300 questions during this hearing. The record before the three judge panel also included the deposition testimony of defendant Capriotti, who despite verifying the removal petition against Mr. Baldau, could not testify to personal knowledge of Mr. Baldau's malfeasance or official misconduct.

After hearing evidence from both sides, the three judge panel resoundingly concluded that there was no probable cause to bring the removal action against Mr. Baldau, stating that there "is not a scintilla of evidence in this case to support any of the allegations" against Mr. Baldau. The panel also concluded that there was no "reasonable, logical or rational explanation" presented by the defendants explaining why they singled out Mr.

Baldau for removal from the nine-member commission. The probable cause issue was clearly before the three judge panel and both sides had a full and fair opportunity to litigate the matter before them. Having relied on the three judge panel's determination that the defendants presented no "reasonable, logical or rational explanation" for bringing the removal action against Mr. Baldau, we find that the circuit court did not err by granting partial summary judgment to Mr. Baldau on the issue of probable cause.

The circuit court also determined that the lack of probable cause established by the three judge panel's order raised an inference of malice. In civil malicious prosecution cases, the issues of malice and probable cause become questions of law for the court where there is no conflict of evidence or where there is only one inference to be drawn by reasonable minds. *Truman v. Fidelity & Casualty Co. of New York*, 146 W.Va. 707, 724, 123 S.E.2d 59, 70 (1961). "Malice may be inferred from the prosecution of a civil suit . . . where want of probable cause for such prosecution is shown by a preponderance of the evidence." Syllabus Point 3, *Hunter v. Beckley Newspapers Corp.*, 129 W.Va. 302, 40 S.E.2d 332 (1946). The three judge panel found that the defendants failed to present any rational explanation for bringing the removal action against Mr. Baldau. Having relied on this conclusion, we find that the circuit court did not abuse its discretion by inferring malice due to the lack of probable cause.

We also note that while the circuit court determined that the prior ruling raised an inference of malice, the main issue during the trial was whether the defendants acted with actual malice. The circuit court instructed the jury that actual malice "is a sinister or corrupt motive such as hatred, personal spite, a desire to injure the Plaintiff or a conscious disregard of the rights of others . . . Actual malice may not be inferred but must be found by the jury." The jury, not

essential part of the decision in the prior proceeding, (4) the prior judgment was final and valid, and (5) the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue.
*In re Coleman*, 426 F.3d 719, 729 (4th Cir. 2005).

A detailed discussion of collateral estoppel can be found in *Litigation Handbook on West Virginia Rules of Civil Procedure* § 8(c)[xi][I](3d ed.2008). Franklin D. Cleckley, Robin J. Davis & Louis J. Palmer, Jr.

the circuit court, determined that the defendants acted with actual malice.

Based on all of the above, we conclude the circuit court did not err when it granted Mr. Baldau's motion for partial summary judgment.

### 3. Damage Awards

The defendants' final assignment of error is that the circuit court erred by (1) instructing the jury that it could award Mr. Baldau general compensatory damages for "mental anguish, upset, annoyance and inconvenience," (2) instructing the jury that malice was inferred, thereby causing the jury to award punitive damages against the defendants, and (3) erroneously ordering the defendants to pay Mr. Baldau's attorney fees.

### A. General Compensatory Damages

The jury awarded Mr. Baldau $5000.00 for general compensatory damages, which the verdict form stated were "mental anguish, upset, annoyance and inconvenience." The defendants argue that mental anguish damages are not available in civil malicious prosecution cases. The defendants admit, however, that mental anguish damages are available in criminal malicious prosecution actions. For instance, Syllabus Point 17 of *Vinal v. Core*, 18 W.Va. 1 (1881), *rev'd on other grounds*, states:

> In an action for a malicious prosecution for a crime alleged to have been committed by the plaintiff the measure of damages is such an amount, as the jury may find will compensate the plaintiff for the actual outlay and expenses about his defense ... and for the injury to his feelings, person and character by his detention in custody and prosecution.[.]

This Court has previously affirmed general compensatory damages for emotional distress in cases arising under the First Amendment. *See e.g., Estep v. Brewer*, 192 W.Va. 511, 453 S.E.2d 345 (1994) (libel case affirming a jury award of $150,000 for emotional distress, $50,000 for damage to reputation, and $50,000 for punitive damages). We note that courts in other jurisdictions have held that mental anguish damages are available in malicious prosecution cases. *See Delchamps, Inc. v. Bryant*, 738 So.2d 824, 837 (Ala.1999) (recognizing mental anguish damages can be recovered in a malicious prosecution action).

In determining whether Mr. Baldau presented sufficient evidence to justify the jury's $5000.00 general compensation/mental anguish award, we are guided by Syllabus Point 5 of *Orr v. Crowder*, 173 W.Va. 335, 315 S.E.2d 593 (1983):

> In determining whether there is sufficient evidence to support a jury verdict the court should: (1) consider the evidence most favorable to the prevailing party; (2) assume that all conflicts in the evidence were resolved by the jury in favor of the prevailing party; (3) assume as proved all facts which the prevailing party's evidence tends to prove; and (4) give to the prevailing party the benefit of all favorable inferences which reasonably may be drawn from the facts proved.

There was significant testimony concerning Mr. Baldau's mental anguish, including testimony from both him and his wife that the defendants' removal action caused him to seek psychological counseling. The court instructed the jury on the matter and both sides argued the degree of Mr. Baldau's mental anguish during their closing arguments. Counsel for the defendants asked the jury to focus on Mr. Baldau's mental anguish, not the mental anguish suffered by his wife or children. An examination of the record shows that this issue was properly before the jury, sufficient evidence was presented and the jury, after weighing all the evidence, found in favor of Mr. Baldau and awarded him $5000.00 in general compensatory damages. After a thorough review of this matter, we find nothing in our statutory or case law precluding a plaintiff in a civil malicious prosecution action from recovering mental anguish damages.

### B. Punitive Damage Award

The defendants argue that the jury's punitive damage award of $15,000.00 against each defendant was prejudiced by the circuit court's instruction to the jury that malice was inferred. They also argue that punitive damages are not justified under the factors set forth in *Garnes v. Fleming Landfill, Inc.*, 186 W.Va. 656, 413 S.E.2d 897 (1991).

Having already addressed and found no error in the circuit court's finding that malice was inferred based on the lack of probable

cause, we will proceed to the defendants' *Garnes* argument. Syllabus Point 3 of *Garnes* requires a circuit court to carefully explain five factors a jury should consider when contemplating a punitive damage award.[14] The circuit court properly instructed the jury on these factors. Having been properly instructed, the jury returned a $15,000.00 punitive damage award against each defendant. *Garnes* also requires a circuit court to review a jury's punitive damage award, which the circuit court did, clearly explaining its reasons for upholding the punitive damage award pursuant to the *Garnes* factors in its order denying defendants' post-trial motions. Our review of the record indicates that the circuit court's application of the *Garnes* factors to the punitive damage award in this case is reasonable and supported by the evidence.

### C. Attorney's Fees

■ The defendants final assignment of error is that the circuit court abused its discretion by ordering the defendant to pay Mr. Baldau's attorney's fees. We give "wide discretion in determining the amount of . . . court costs and counsel fees, and the trial [court's] . . . determination of such matters will not be disturbed upon appeal to this Court unless it clearly appears that [it] has abused [its] discretion."[15]

■ The circuit court entered an order explaining why it awarded attorney's fees and costs to Mr. Baldau. The circuit court stated that it "agrees with the jury's finding in response to the special interrogatory requested by the defendants and concludes that the defendants here acted maliciously and in bad faith, vexatiously, wantonly, for oppressive reasons, and with criminal indifference to the rights of Todd Baldau." The circuit court cited Syllabus Point 3 of *Sally–Mike Properties v. Yokum,* 179 W.Va. 48, 365 S.E.2d 246 (1986), for its authority to make this award. Syllabus Point 3 states:

> There is authority in equity to award to the prevailing litigant his or her reasonable attorney's fees as 'costs,' without express statutory authorization, when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons.

Having thoroughly reviewed this matter, we find no abuse of discretion on this issue. The circuit court's decision was supported by the evidence in the record and by the jury's conclusion that the defendants acted "maliciously, wantonly, mischievously or with criminal indifference" towards Mr. Baldau.

## IV.

### Conclusion

For the above stated reasons, the judgment of the Circuit Court of Jefferson County is affirmed.

Affirmed.

---

14. These five factors are:
(1) Punitive damages should bear a reasonable relationship to the harm that is likely to occur from the defendant's conduct as well as to the harm that actually has occurred. If the defendant's actions caused or would likely cause in a similar situation only slight harm, the damages should be relatively small. If the harm is grievous, the damages should be greater.
(2) The jury may consider . . . the reprehensibility of the defendant's conduct. The jury should take into account how long the defendant continued in his actions, whether he was aware his actions were causing or were likely to cause harm, whether he attempted to conceal or cover up his actions or the harm caused by them, whether/how often the defendant engaged in similar conduct in the past, and whether the defendant made reasonable efforts to make amends by offering a fair and prompt settlement for the actual harm caused once his liability became clear to him.

(3) If the defendant profited from his wrongful conduct, the punitive damages should remove the profit and should be in excess of the profit, so that the award discourages future bad acts by the defendant.
(4) As a matter of fundamental fairness, punitive damages should bear a reasonable relationship to compensatory damages.
(5) The financial position of the defendant is relevant.

15. "[T]he trial [court] . . . is vested with a wide discretion in determining the amount of . . . court costs and counsel fees, [sic] and the trial [court's] . . . determination of such matters will not be disturbed upon appeal to this Court unless it clearly appears that [it] has abused [its] discretion." (Citations omitted). Syllabus Point 2, *Daily Gazette Co., Inc. v. West Virginia Development Office,* 206 W.Va. 51, 521 S.E.2d 543 (1999).