392 S.E.2d 224

**Michael C. FARBER**

v.

**Walter J. DALE, Individually and in his Capacity as the Chairman of the West Virginia Health Care Cost Review Authority.**

No. 19138.

Supreme Court of Appeals of West Virginia.

April 12, 1990.

Daniel R. Schuda, Steptoe & Johnson, Charleston, for Walter J. Dale.

Michael C. Farber, Sutton, for Michael C. Farber.

BROTHERTON, Justice.

This case is before the Court on the following certified question from the Circuit Court of Braxton County:

Is a defendant entitled to absolute immunity in a civil action in which he has been sued for libel based upon his testimony before the West Virginia State Bar Legal Ethics Committee?

On December 17, 1985, the defendant, Walter J. Dale, was a member of the West Virginia Health Care Cost Review Authority (HCCRA), an administrative agency of the State of West Virginia, which was conducting a public hearing in Elkins, West Virginia, to determine whether Memorial General Hospital should be allowed to close temporarily due to financial difficulties. The plaintiff, Michael C. Farber, appeared at the hearing as counsel for "Concerned Citizens For Health Care," a group which opposed closing the hospital.

In an order dated January 10, 1986, the HCCRA temporarily suspended Michael Farber's privileges to practice as an attorney before the HCCRA for what the Board

referred to as disrespectful activities at the December 17, 1985, hearing.[1] Then, on January 14, 1986, the HCCRA filed a complaint with the Committee on Legal Ethics of the West Virginia State Bar regarding Michael Farber's actions and conduct at the same hearing.

On June 1, 1987, the Committee on Legal Ethics conducted a hearing in the matter of *In re Michael C. Farber*, L.E.C. 86–14. In a written statement of charges, Farber was accused of making statements at the December 17, 1985, hearing which were "addressed to the audience ... calculated to inflame the spectators." Mr. Dale, who became Chairman of the HCCRA on January 1, 1987, was called to testify as a witness for the West Virginia State Bar. In response to questioning from both the Committee's disciplinary counsel and Mr. Farber, Mr. Dale stated that approximately five minutes before the December 17, 1985, hearing concluded, Mr. Farber was standing and facing the audience when "he made the statement the hearing reminded him of the Gestapo in a Fascist tactics meeting."

Mr. Dale's statements were reported in the Charleston Gazette, on June 2, 1987,[2] and Mr. Farber subsequently filed a civil action against Mr. Dale, seeking $200,000 in compensatory and punitive damages. Mr. Farber's complaint charged that when Mr. Dale appeared before the Committee on Legal Ethics, he "knowingly and willingly testified in a false and deceitful manner about certain comments supposedly made by [Mr. Farber] to members of the audience during the HCCRA hearing of December 17, 1985."

In an order dated November 29, 1988, the Circuit Court of Braxton County denied the defendant's motion to dismiss on the grounds of the absolute immunity of the defendant as a witness. The court noted that Article VI, Section 43 of the West

---

1. *See Christie v. W.Va. Health Care Cost Review Authority*, 176 W.Va. 420, 345 S.E.2d 22 (1986), in which this Court held that the HCCRA did not have the power to suspend Mr. Farber's privilege to practice law.

2. In covering the June 1, 1987, State Bar hearing, the Charleston Gazette reported that "Wal-

ter J. Dale, now chairman of HCCRA, called Farber's behavior 'very unprofessional ... very abusive ... completely out of control.' Dale testified he heard Farber say that the hearing reminded him of a 'Gestapo, Nazi, fascist meeting.' Farber questioned the accuracy of Dale's memory."

Virginia State Bar Constitution "provides that testimony given before a Legal Ethics Committee is absolutely privileged and not subject to complaint or discovery in any civil litigation." However, the court concluded that "the answer to the question is not sufficiently clear so as to justify this Court's dismissal of the plaintiff's complaint on these grounds." Pursuant to W.Va.Code § 58–5–2 (1966), the circuit court then certified the question to this Court.

Unlike the circuit court, we believe the law on this point is perfectly clear. In *Higgins v. Williams Pocahontas Coal Co.,* 103 W.Va. 504, 138 S.E. 112 (1927), this Court discussed the absolute privilege in the context of a libel action arising out of a letter written to the workmen's compensation commissioner by the defendant employer. In that case, the defendant argued that the letter constituted a "communication to a quasi judicial tribunal of a party interested in the subject-matter then under investigation" and therefore, was absolutely privileged. *Id.* at 113. Plaintiff's counsel conceded that "the compensation commissioner acts in a quasi judicial capacity in determining claims ... and that a witness testifying in a 'regular manner' before the commissioner would be exempt from liability for any statements then made." *Id.*[3]

This Court found that the statements contained in the letter were relevant to the commission's inquiry and, "[b]eing relevant, the letter was absolutely privileged, and its status is not changed by falsity or maliciousness of its statements." *Id.*

Like the Workers' Compensation Commission, the West Virginia State Bar Committee on Legal Ethics is a quasi-judicial tribunal.[4] With respect to proceedings before the West Virginia State Bar Committee on Legal Ethics, Article VI, Section 43 of the West Virginia State Bar Constitution specifically provides that:

Any proceedings pending before said committee and any records or any testimony with respect thereto shall be absolutely privileged. The testimony given before the committee with respect to any investigation, complaint, or proceeding shall not be subject to discovery in any civil litigation.

In *Daily Gazette Co., Inc. v. Committee on Legal Ethics of the West Virginia State Bar,* 174 W.Va. 359, 326 S.E.2d 705, 712 (1984), this Court interpreted this provision and stated that:

Article VI, Section 43 of the By–Laws, which is designed to encourage the filing of valid complaints, grants absolute libel immunity to complainants under the attorney disciplinary system, even to those who file groundless or malicious complaints. Therefore, we recognize that during the initial investigatory stage there is a valid interest in providing protection against unwarranted injury arising from unsupported complaints which are privileged under Article VI, Section 43 and thus, cannot be the subject of libel action.

Our holding in *Daily Gazette* is consistent with the position of the American Bar Association articulated in Section 8.3 of the Standards for Professional Discipline for Lawyers and Judges. Section 8.3 provides that "[c]omplainants should be absolutely immune from civil liability for all communications to the agency, but disclosure of the

---

**3.** In *Parker v. Appalachian Electric Power Co.,* 126 W.Va. 666, 30 S.E.2d 1, 4 (1944), this Court recognized that "[w]ith a few exceptions not necessary to mention, absolutely privileged communications are limited to legislative, judicial and quasi-judicial proceedings and other acts of the state."

*See also City of Mullens v. Davidson,* 133 W.Va. 557, 57 S.E.2d 1, 6 (1949), in which we stated that "On the ground of public policy, certain communications are recognized as privileged and, in the law of libel and slander, a privileged communication is a communication which would be defamatory and actionable, ex-

cept for the occasion on which, or the circumstances under which, it is made."

**4.** In *U.S. Steel Corporation v. Stokes,* 138 W.Va. 506, 76 S.E.2d 474, 477 (1953), this Court stated:

In Black's Law Dictionary, Fourth Edition, the term "quasi judicial" is defined as follows: "A term applied to the action, discretion, etc. of public administrative officers, who are required to investigate facts, or ascertain the existence of facts, and draw conclusions from them, as a basis for their official action, and to exercise discretion of a judicial nature."

information to anyone else should not be protected."[5]

In the commentary to this section, the ABA explains that the rationale behind the policy of giving complainants absolute immunity is that it "encourages those who have some doubt about a lawyer's conduct to submit the matter to the proper agency, where it may be examined and determined. Without immunity, some valid complaints will not be filed." If ethics investigations are to be conducted effectively, it is imperative that complainants be free from the threat of themselves being sued.

We reject the plaintiff's suggestion that we take this opportunity to carve out an exception to the grant of absolute immunity. According to the plaintiff, a so-called "public official" exception would subject a public official to liability for damages if he "uses the institutional powers of his office and the state to defame an attorney."[6] The occasional filing of false or malicious charges, while regrettable, is nonetheless inevitable in these types of proceedings. In the commentary to Section 8.3 of the Standards for Professional Discipline for Lawyers and Judges, the ABA recognizes that:

> The individual lawyer may suffer some hardship as the result of the occasional filing of a malicious complaint, but a profession that wants to retain the power to police its own members must be prepared to make some sacrifice to that cause.
>
> It is unlikely that even a malicious complaint will cause any damage beyond some inconvenience. The members of the agency to whom the complaint is submitted will surely not hold it against the lawyer, for their very function is to separate meritorious from undeserving complaints. The policy of agencies not to divulge the existence of complaints while they are being investigated effectively protects the lawyer from any unwarranted public disclosure. Thus, the

lawyer is given more practical protection than a party to an ordinary suit, in which pleadings are public.

Ultimately, it is the responsibility of the investigative body to determine the validity of a charge. Whether the claim is filed by a private citizen or a public official should be irrelevant.

In response to the question certified to this Court from the Circuit Court of Braxton County, we find that a defendant who has been sued for libel as a result of testimony given before the West Virginia State Bar Legal Ethics Committee is entitled to absolute immunity from such suit, as provided by Article VI, Section 43 of the West Virginia State Bar Constitution.

Certified question answered; case remanded.

---

**5.** *See generally* Annot., 9 A.L.R.4th 807 (1981).

**6.** In ruling on a motion to dismiss in an order entered on March 10, 1988, the circuit court stated that the action was against the defendant, Walter J. Dale, individually, not as a member of, or as chairman of, the West Virginia Health Care Cost Review Authority.