IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2021 Term

_____

No. 19-1076

_____

FILED
February 24, 2021
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

THOMAS W. SMITH,
THOMAS W. SMITH, Administrator of the Estate of
ELIZABETH ANNE SMITH,
RACHEL DICKHUT,
NANCY SMITH McGREGOR,
MARY SMITH NELSON, and
ELIZABETH SMITH ARTHUR,
Petitioners

v.

CHESTNUT RIDGE STORAGE, LLC,
Respondent

_____

Appeal from the Circuit Court of Monongalia County
The Honorable Debra H. Scudiere, Judge
Civil Action No. 11-C-457

REVERSED AND REMANDED WITH DIRECTIONS

_____

Submitted: January 27, 2021
Filed: February 24, 2021

Wade W. Massie, Esq.
Penn, Stuart & Eskridge
Abingdon, Virginia
Stephen L. Thompson, Esq.
Barth & Thompson
Charleston, West Virginia
Counsel for Petitioners

Karen Kahle, Esq.
Kahle Law Office
Wheeling, West Virginia
Counsel for Respondent

Howard M. Persinger, III, Esq.
Persinger & Persinger, L.C.
Charleston, West Virginia

Counsel for Amici West Virginia
Land and Mineral Owners' Association,
West Virginia Royalty Owners'
Association, West Virginia Farm Bureau
and National Association of Royalty
Owners, Appalachia

JUSTICE ARMSTEAD delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1. "This Court reviews *de novo* the denial of a motion for summary judgment, where such a ruling is properly reviewable by this Court." Syl. Pt. 1, *Findley v. State Farm Mut. Auto. Ins. Co.*, 213 W. Va. 80, 576 S.E.2d 807 (2002).

2. "A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

3. "Summary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syl. Pt. 2, *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 459 S.E.2d 329 (1995).

4. "An order denying a motion for summary judgment is merely interlocutory, leaves the case pending for trial, and is not appealable except in special instances in which an interlocutory order is appealable." Syl. Pt. 8, *Aetna Cas. & Sur. Co. v. Fed. Ins. Co. of NY*, 148 W. Va. 160, 133 S.E.2d 770 (1963).

5. "A circuit court's denial of summary judgment that is predicated on qualified immunity is an interlocutory ruling which is subject to immediate appeal under the 'collateral order' doctrine." Syl. Pt. 2, *Robinson v. Pack*, 223 W. Va. 828, 679 S.E.2d 660 (2009).

6. "The litigation privilege is generally applicable to bar a civil litigant's claim for civil damages against an opposing party's attorney if the alleged act of the

attorney occurs in the course of the attorney's representation of an opposing party and is conduct related to the civil action." Syl. Pt. 3, *Clark v. Druckman*, 218 W. Va. 427, 624 S.E.2d 864 (2005).

ARMSTEAD, Justice:

In this appeal of a circuit court's order denying Petitioners'[1] motion for summary judgment, we consider whether Petitioners are immune from Respondent Chestnut Ridge Storage LLC's ("Chestnut Ridge") lawsuit pursuant to the litigation privilege and the *Noerr-Pennington* doctrine.[2] After review,[3] and for the reasons explained herein, we conclude that both of these immunities apply. We therefore reverse the circuit court's order and remand with instructions for the circuit court to enter summary judgment in favor of Petitioners.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioners own an oil and gas estate underlying a track of 4,572 acres located in Monongalia County and Preston County in West Virginia, and Fayette County in Pennsylvania. In 1987, Petitioners executed an oil and gas lease in favor of Fox Oil and Gas, Inc. The Lease was later acquired by Oil & Gas Management, Inc. ("OGM").

---

[1] Petitioners are Thomas W. Smith, Thomas W. Smith, administrator of the estate of Elizabeth Anne Smith, Rachel Dickhut, Nancy Smith McGregor, Mary Smith Nelson, and Elizabeth Smith Arthur.

[2] *See E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523 (1961); *United Mine Workers v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585 (1965).

[3] We wish to acknowledge the amicus curiae brief submitted by the West Virginia Land and Mineral Owners' Association, the West Virginia Royalty Owners' Association, the West Virginia Farm Bureau, and the National Association of Royalty Owners, Appalachia ("Amicus Curiae Organizations"). We value the Amicus Curiae Organizations' contribution to this case, and have considered their brief in conjunction with the parties' arguments.

1

Petitioners signed an addendum to the lease on January 26, 1993 ("Addendum"), allowing the lessee to use depleted strata for gas storage. In July of 2007, OGM assigned approximately 2,300 acres of Petitioners' tract to Chestnut Ridge for a storage project.

In December of 2007, Chestnut Ridge applied to the Federal Energy Regulatory Commission ("FERC" or the "Commission") for a certificate of public convenience and necessity to construct and operate a storage field. Petitioners intervened in that proceeding and objected to Chestnut Ridge's planned storage project because, they argued, the "areas proposed for storage on their property were not depleted and that the [Addendum] only allows [Chestnut Ridge] to employ depleted strata for storage."

Paragraphs two and three of the Addendum concern storage rights:

> 2.     Lessor grants to Lessee the exclusive right to employ any depleted oil or gas stratum underlying the lands for the storage of gas and may, for this purpose, reopen and restore to operation any and all abandoned wells on the leased premises which may have penetrated said depleted stratum or may drill new wells thereon for the purpose of freely introducing and storing gas in such stratum and recovering the same therefrom.

> 3.     It is agreed that the cessation of production from wells on the Leased Premises or upon other lands unitized therewith after the expiration of the original term of the Lease, shall not terminate the Lease whether the pooling units have been dissolved or not, if the Lands are used for the storage of gas prior to the plugging and abandonment of wells from which oil or gas has been produced except that it is agreed that the storage of gas shall not extend the terms of the Lease pertaining to any other sand or sands beyond 100 feet above and 100 feet below the sand or sand horizons which are being used to store gas. . . . [I]t is agreed that Lessee shall be the sole judge as to whether gas is being stored within the Leased Premises and that its determination shall be final and conclusive.

2

Chestnut Ridge did not object to Petitioners intervening in the FERC proceeding. In fact, Chestnut Ridge urged the Commission to allow the intervention, stating that it would "contribute to the development of a complete record (by furnishing assurances that Chestnut Ridge will provide [Petitioners] reasonable compensation for their various leasehold interests . . .) and will assist the Commission's decision-making process."

Additionally, Chestnut Ridge did not generally contest the assertion that the gas reserves were not fully depleted. Instead, Chestnut Ridge provided that they intended to negotiate with Petitioners to compensate them for the gas reserves that were still in place. While acknowledging that it had a duty to compensate Petitioners for such gas reserves, Chestnut Ridge argued that any dispute over this issue could be resolved in court, and stated that this issue should not prevent the Commission from approving its proposed storage facility.

The Commission entered an order on August 31, 2009, granting Chestnut Ridge's request. Relevant to the instant case, the Commission's order noted that Petitioners filed a "[t]imely, unopposed" motion to intervene in the FERC proceeding. The Commission's order also provides that Chestnut Ridge did not contest Petitioners' allegation that the gas reserves were not fully depleted:

> *The parties agree that the production field is not yet depleted, and Chestnut Ridge does not dispute [Petitioners]' contention that converting a currently producing field into a storage reservoir would be inconsistent with the provision of the parties' gas storage addendum.* Thus, in assessing the proposal, we consider the burden that the proposed project would impose on property owners; [Petitioners] identify this burden as the loss of royalty payments that property owners

3

would realize but for gas being left in place as part of the development of the proposed storage facility. This burden constitutes economic harm, and as such, can be remedied by Chestnut Ridge paying property owners the equivalent of what they would have received in royalties for gas that could have been produced, but that will instead remain in situ to serve as cushion gas to support the storage facility. The issue of just compensation is a matter for negotiation between property owners and Chestnut Ridge and if the parties are unable to reach an agreement, just compensation will be determined by appropriate court.

(Emphasis added).

Per the Commission's order, Chestnut Ridge had two years to complete construction of the storage facility. Chestnut Ridge did not complete construction of the storage facility within two years. In August of 2011, it sought a three-year extension to complete the project. Chestnut Ridge's request for an extension of time provided that "commercial and financial factors related to recent changes in the natural gas storage market and the overall state of the economy since the Certificate Order [2009 order] was issued have delayed the Project to date." Petitioners opposed this extension, asserting that Chestnut Ridge had failed to move the project forward in the previous two years. The Commission denied Chestnut Ridge's request to extend the timeframe, finding that Chestnut Ridge failed to take the necessary steps to construct the field, and that the project was not viable.

Chestnut Ridge then filed a motion for rehearing before the Commission. The Commission denied this motion, explaining that

Chestnut Ridge's deadline for completing the project came and went, and it is still unable to secure financing or present any

4

evidence of market demand for its storage services at the rates it says it would need to make its project viable. Therefore, we affirm the determination of the Director of OEP that "[g]iven the absence of customer demand and funding at this point . . . Chestnut Ridge's desire to maintain the viability of its certificate and its belief that circumstances will eventually change such that its project will become viable" are not "sufficient reasons to grant the requested three-year extension of time."

In July of 2011, Petitioners filed suit against Chestnut Ridge alleging breach of contract and seeking declaratory judgment.[4] Chestnut Ridge's answer to this lawsuit included a counterclaim against Petitioners alleging breach of contract, civil conspiracy, slander of title, and seeking declaratory judgment. Chestnut Ridge asserted that Petitioners' opposition to the FERC certificate breached the duty of good faith and fair dealing, and that the opposition was a "general breach" of the Lease and Addendum. Specifically, Chestnut Ridge asserted that Petitioners' "continued opposition to the FERC proceeding proximately caused or contributed to the FERC's decision to deny Chestnut Ridge's request for an extension of time to complete construction of the storage project." Finally, Chestnut Ridge's counterclaim sought declaratory relief on two issues: "A.

---

[4] Petitioners alleged that Chestnut Ridge (and other defendants) were obligated to develop the Marcellus Shale within the storage area; that these defendants breached the Addendum by obtaining the FERC certificate on portions of the property that were not depleted; and that these defendants breached the agreement by refusing to develop or permit development of the Marcellus Shale in the storage area. In 2014, the circuit court granted summary judgment to Chestnut Ridge on Petitioners' claims. This Court affirmed the circuit court's ruling in a memorandum decision, *Smith v. Chestnut Ridge Storage, LLC*, No. 14-0136, 2014 WL 6607569 (W. Va. Nov. 21, 2014) (memorandum decision).

Whether Chestnut Ridge complied with its obligations under the Gas Storage Addendum in obtaining a FERC certificate; and B. Whether the Smith Heirs [Petitioners] breached the Gas Storage Addendum by opposing the FERC certificate."

After discovery was complete, Petitioners filed a motion for summary judgment on the counterclaim, asserting, among other arguments,[5] that Chestnut Ridge's claims were barred by the litigation privilege and the *Noerr-Pennington* doctrine. Chestnut Ridge also filed a motion for summary judgment. It argued that Petitioners' representations before the Commission that Chestnut Ridge could not store gas until the gas was depleted from the strata resulted in an anticipatory breach of the Addendum. Additionally, Chestnut Ridge argued that Petitioners "relentless and unequivocal" opposition during the FERC proceeding violated the duty of good faith and fair dealing. It also asserted that Petitioners' "improper and inaccurate" interpretation of the Addendum slandered their title to their gas storage rights. Finally, Chestnut Ridge sought a declaratory judgment that it, the lessee under the Addendum, had the "sole discretion to determine when a stratum or reservoir is depleted" and that it had no obligation to compensate Petitioners for gas remaining in unproduced strata at the time of conversion to storage.

---

[5] Petitioners also argued that: 1) Chestnut Ridge was estopped from asserting any claim against Petitioners for their participation in the FERC proceeding given Chestnut Ridge's failure to object to their participation; 2) the information they presented during the FERC proceeding did not constitute a slander of title or breach of the Lease because everything they presented was truthful; and 3) Chestnut Ridge's claims were barred by the applicable two-year statute of limitations.

The circuit court held a hearing on these motions on October 28, 2019. During the hearing, Petitioners argued that they were entitled to summary judgment based on the litigation privilege because the counterclaim was based solely on statements they made during the FERC proceeding. Chestnut Ridge did not contest this assertion. However, counsel for Chestnut Ridge argued that the litigation privilege should not apply because the statements were "slanderous, and probably, more importantly, in breach of a contract[.]" In response, the parties had the following exchange:

> Counsel for Petitioners: "So, we've narrowed this down, everything we're being sued for we said in a judicial proceeding, a quasi-judicial proceeding, we're being sued for what we said in that proceeding."
>
> Circuit Court Judge: "And is that true, Ms. Kahle [counsel for Chestnut Ridge]? Do you agree with that?"
>
> Counsel for Chestnut Ridge: "Yes."

Petitioners argued that whether the litigation privilege applies is a question of law, and asked the circuit court to grant summary judgment in their favor. The circuit court did not explicitly address the litigation privilege in its oral ruling on Petitioners' motion for summary judgment or in its subsequent order. Instead, it only provided that "I think there is a question of damages and I'm going to deny that motion."

The circuit court also denied Chestnut Ridge's motion for summary judgment, finding:

> I think there has been an admission that there were questions of fact as to damages. I'm going to deny [Chestnut Ridge's] motion for summary judgment because I think that there are questions of fact for the jury on whether factually there was a

7

breach, whether factually there was a slander of title, and whether factually there was civil conspiracy.

On November 8, 2019, the circuit court entered its "Order Regarding Various Motions" memorializing its rulings made at the hearing. It provides:

> For the reasons stated by the Court at the hearing, it is ORDERED that Chestnut Ridge Storage LLC's motion for Summary Judgment on Liability is Denied.
>
> It is further ORDERED that Chestnut Ridge Storage LLC's Motion for Declaratory Judgment is Denied. The Court finds that Chestnut Ridge Storage LLC is the sole judge as to when/whether strata are depleted and gas can be stored.
>
> It is further ORDERED that the [Petitioners'] Renewed Motion for Summary Judgment on the Counterclaim is denied.

After entry of this order, Petitioners filed the instant appeal.

## II. STANDARD OF REVIEW

Petitioners appeal the circuit court's denial of their summary judgment motion, asserting that they are immune from Chestnut Ridge's lawsuit pursuant to the litigation privilege and the *Noerr-Pennington* doctrine. "This Court reviews *de novo* the denial of a motion for summary judgment, where such a ruling is properly reviewable by this Court." Syl. Pt. 1, *Findley v. State Farm Mut. Auto. Ins. Co.*, 213 W. Va. 80, 576 S.E.2d 807 (2002). Similarly, we have held that "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). Further,

> [s]ummary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the

8

nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

Syl. Pt. 2, *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 459 S.E.2d 329 (1995).

## III. ANALYSIS

Petitioners argue that they are immune from Chestnut Ridge's counterclaim under the litigation privilege and the *Noerr-Pennington* doctrine. Before addressing these two arguments, we examine whether the circuit court's denial of Petitioners' summary judgment motion is reviewable by this Court.

This Court has held that "[a]n order denying a motion for summary judgment is merely interlocutory, leaves the case pending for trial, and is not appealable except in special instances in which an interlocutory order is appealable." Syl. Pt. 8, *Aetna Cas. & Sur. Co. v. Fed. Ins. Co. of NY*, 148 W. Va. 160, 133 S.E.2d 770 (1963). Petitioners assert that the circuit court's order denying their motion for summary judgment is immediately reviewable under this Court's collateral order doctrine. Under the collateral order doctrine, an interlocutory order may be subject to immediate appeal if it "(1) conclusively determines the disputed controversy, (2) resolves an important issue completely separate from the merits of the action, and (3) is effectively unreviewable on appeal from a final judgment." *Credit Acceptance Corp. v. Front*, 231 W. Va. 518, 523, 745 S.E.2d 556, 561 (2013)

9

(citation omitted). Chestnut Ridge agrees that this Court may properly review the circuit court's ruling on "the immunity defenses."[6]

Because Petitioners set forth two assignment of errors asserting immunity from Chestnut Ridge's counterclaim, we find that the present appeal is comparable to a circuit court's denial of a summary judgment motion based on qualified immunity. We have held that "[a] circuit court's denial of summary judgment that is predicated on qualified immunity is an interlocutory ruling which is subject to immediate appeal under the 'collateral order' doctrine." Syl. Pt. 2, *Robinson v. Pack*, 223 W. Va. 828, 679 S.E.2d 660 (2009). In *Hutchison v. City of Huntington*, 198 W. Va. 139, 479 S.E.2d 649 (1996), this Court noted that "[w]e agree with the United States Supreme Court to the extent it has encouraged, if not mandated, that claims of immunities, where ripe for disposition, should be summarily decided before trial." 198 W. Va. at 147, 479 S.E.2d at 657. In *Robinson*, an opinion written by Justice McHugh, the Court considered whether a qualified immunity ruling is "effectively unreviewable" at the appellate stage:

> Postponing review of a ruling denying immunity to the post-trial stage is fruitless, as the United States Supreme Court reasoned in *Mitchell*, because the underlying objective in any immunity determination (absolute or qualified) is immunity from suit. . . . Traditional appellate review of a qualified immunity ruling cannot achieve the intended goal of an

---

[6] Chestnut Ridge asserts that the circuit court's ruling on the declaratory judgment portion of the counterclaim is not "presently appealable because it does not meet the criteria for a collateral order."

immunity ruling: "the right not to be subject to the burden of trial."

223 W. Va. at 833, 679 S.E.2d at 665.

Based on the foregoing, we conclude that the instant appeal is immediately reviewable under the collateral order doctrine. As in *Robinson*, we find that postponing review of Petitioners' claims of immunity based on the litigation privilege and the *Noerr-Pennington* doctrine would frustrate one of the intended goals of these immunities—the right not to be subject to the burden of trial. We therefore proceed to consider Petitioners' assertion that they are immune from Chestnut Ridge's counterclaim.

**A. Litigation Privilege**

Petitioners argue that Chestnut Ridge's counterclaim is barred by the litigation privilege. According to Petitioners, it is undisputed that the counterclaim is based only on statements made during the FERC proceeding. Petitioners note that they participated in the FERC proceeding without objection by Chestnut Ridge, and that the order granting the FERC certificate provided that the parties "agree that the production field is not yet depleted, and Chestnut Ridge does not dispute [Petitioners'] contention that converting a currently producing field into a storage reservoir would be inconsistent with the provision of the parties' gas storage addendum." Petitioners assert that because their complained of actions consisted entirely of statements they made during a quasi-judicial proceeding, they are entitled to immunity from Chestnut Ridge's counterclaim based on the litigation privilege.

11

Similarly, in the Amicus Curiae Organizations' brief, they note that Petitioners were exercising their right to appear in a quasi-judicial proceeding, and asserting legitimate legal positions therein. The Amicus Curiae Organizations aver that "[a]llowing Chestnut Ridge to attack this lawful exercise of well-established rights of participation . . . risks a damaging, chilling effect" on the continued exercise of such rights. Further, the Amicus Curiae Organizations offer the following summary of the current lawsuit, and their analysis explaining why the litigation privilege should apply:

> [T]he alleged statements which form the factual predicate [for] both counterclaims . . . amount to nothing more than assertions of a colorable legal position regarding the proper contractual interpretation of paragraphs 2 and 3 of the [Addendum] and whether or not the proposed storage area consisted of strata which were or were not "depleted" such that the storage rights arising under these paragraphs have legally accrued to Chestnut Ridge.

> Accordingly, it is simply beyond cavil that the statements made by [Petitioners] in the course of the quasi-judicial proceeding at the heart of this case, statements which amounted to nothing more than legitimate assertion of a legal position by counsel [on] a contested issue, are absolutely subject to the litigation privilege and cannot form the basis of a counterclaim for defamation or similar claims.

By contrast, Chestnut Ridge asserts that "because Petitioners were intervenors in the contested FERC proceeding in which the wrongful statements were made, litigation privilege immunity is not available to them." According to Chestnut Ridge, the "[l]itigation privilege in West Virginia has not been, nor should it now be, enlarged to provide absolute immunity for *intervenors* in a judicial or quasi-judicial proceeding." (Emphasis added). Assuming the litigation privilege could apply to an

12

intervenor, Chestnut Ridge argues that it should not apply to either a breach of contract claim or a slander of title claim.

After review, we agree with Petitioners and conclude that they are entitled to immunity from Chestnut Ridge's counterclaim based on the litigation privilege. This Court has addressed the litigation privilege in a number of cases. We have observed that, in general, absolute privilege attaches to a party in a judicial or quasi-judicial proceeding "based upon the public interest of encouraging access to the court system while facilitating the truth-seeking process therein." *Collins vs. Red Roof Inns, Inc.*, 211 W. Va. 458, 464, 566 S.E.2d 595, 601 (2002) (Internal citation omitted). The objectives of the litigation privilege include:

> (1) promoting the candid, objective and undistorted disclosure of evidence; (2) placing the burden of testing the evidence upon the litigants during trial; (3) avoiding the chilling effect resulting from the threat of subsequent litigation; (4) reinforcing the finality of judgments; (5) limiting collateral attacks upon judgments; (6) promoting zealous advocacy; (7) discouraging abusive litigation practices; and (8) encouraging settlement.

*Barefield v. DPIC Cos., Inc.*, 215 W. Va. 544, 560, 600 S.E.2d 256, 272 (2004) (Davis, J., concurring).

Moreover, one comment to the Restatement (Second) of Torts § 587 (1977), addressing the absolute privilege that attaches to a party in a judicial proceeding, provides: "a. [t]he privilege . . . is based upon the public interest in according to all men the utmost freedom of access to the courts of justice for the settlement of their private disputes. Like the privilege of an attorney, it is absolute." *Id.*, comment (a).

13

This Court has applied the litigation privilege in both judicial and quasi-judicial proceedings. In *Collins*, the Court noted that the privilege applies in "legislative, judicial and quasi-judicial proceedings and other acts of the State." 211 W. Va. at 461, 566 S.E.2d at 598 (Internal citation omitted).[7] In addition to parties who participate in judicial or quasi-judicial proceedings, this Court has found that the litigation privilege applies to expert and fact witnesses.[8] Similarly, the Court has found that the litigation privilege applies to attorneys. In syllabus point three of *Clark v. Druckman*, 218 W. Va. 427, 624 S.E.2d 864 (2005), we held "[t]he litigation privilege is generally applicable to bar a civil litigant's claim for civil damages against an opposing party's attorney if the alleged act of the attorney occurs in the course of the attorney's representation of an opposing party and is conduct related to the civil action." The Court in *Clark* also noted two exceptions that

---

[7] One quasi-judicial proceeding in which the litigation privilege has been applied is a lawyer disciplinary proceeding. In *Farber v. Dale*, 182 W. Va. 784, 392 S.E.2d 224 (1990), the Court provided that "a defendant who has been sued for libel as a result of testimony given before the West Virginia State Bar Legal Ethics Committee is entitled to absolute immunity from such suit, as provided by Article VI, Section 43 of the West Virginia State Bar Constitution." 182 W. Va. at 787, 392 S.E.2d at 227.

[8] "An adverse expert witness enjoys civil immunity for his/her testimony and/or participation in judicial proceedings where such testimony and/or participation are relevant to said judicial proceedings." Syl. Pt. 2, *Wilson v. Bernet*, 218 W. Va. 628, 625 S.E.2d 706 (2005). In syllabus point eight of *Zsigray v. Langman*, 243 W. Va. 163, 842 S.E.2d 716 (2020), we held that "[j]udicial fact witnesses enjoy absolute immunity from defamation claims based on their trial testimony where such testimony is relevant to the judicial proceeding."

14

apply to the litigation privilege—claims of fraud and malicious prosecution. 218 W. Va. at 435, 624 S.E.2d at 872.

Turning to the present case, we note that FERC is a federal agency "*with authority to render quasi-judicial decisions* on the scope and application of federal energy jurisdiction." Steven Ferrey, *The Medium Is the Message*, 35 Va. Envtl. L.J. 213, 236 (2017) (Emphasis added). The Commission heard evidence from both Chestnut Ridge and Petitioners, and entered a written order explaining its decision granting the relief Chestnut Ridge sought. Therefore, we find that there is no dispute that the FERC proceeding was a quasi-judicial proceeding.

Next, we find that during the FERC proceeding, Chestnut Ridge argued in favor of Petitioners being permitted to participate, and asserted that such participation would help create a complete record before the Commission, and assist in the "decision-making process." While it does not dispute that Petitioners participated in the FERC proceeding or that its counterclaim is based solely on statements made by Petitioners during the FERC proceeding, Chestnut Ridge argues that litigation privilege immunity does not apply because Petitioners were merely intervenors. According to Chestnut Ridge, there is a distinction between an intervenor and a party, and an intervenor may not assert litigation privilege immunity. We disagree.

This Court has ruled that intervenors have "all the rights and responsibilities of any other party to the action." *In re Harley C.,* 203 W. Va. 594, 598, 509 S.E.2d 875, 879 (1998). The Court in *Harley C.* noted that

15

> [b]y the very definition of intervention the intervenor is a party to the action. After intervention, he or she is as much a party to the action as the original parties, and renders himself vulnerable to complete adjudication of the issues in litigation between himself and the adverse party. To make his rights effectual he must necessarily have the same power as the original parties, subject to the authority of the court reasonably to control the proceedings in the case.

*Id.* (*quoting* 59 Am.Jur.2d Parties § 170 (1987)).

Chestnut Ridge concedes that its counterclaim is based solely on statements made by Petitioners during the FERC proceeding. Accordingly, we find that Petitioners are entitled to immunity pursuant to the litigation privilege. In fact, we find that it would be difficult to conceive of a case in which a party had a stronger claim to litigation privilege immunity than that currently before us in which: 1) Chestnut Ridge advocated for Petitioners to be permitted to intervene in the FERC proceeding; 2) Chestnut Ridge did not generally contest the arguments raised by Petitioners during the FERC proceeding; 3) Chestnut Ridge obtained the relief it sought during the FERC proceeding; and 4) the order granting the relief sought by Chestnut Ridge explicitly found that "[t]he parties agree that the production field is not yet depleted, and Chestnut Ridge does not dispute [Petitioners'] contention that converting a currently producing field into a storage reservoir would be inconsistent with the provision of the parties' gas storage addendum."

16

We reject Chestnut Ridge's argument that the litigation privilege should not apply to their slander of title[9] and breach of contract claims.[10]  As previously noted, this

---

[9] Relying on *TXO Production Corp. v. Alliance Resources Corp.*, 187 W. Va. 457, 419 S.E.2d 870 (1992), Chestnut Ridge argues that the litigation privilege should not apply to statements made in a quasi-judicial proceeding that would constitute slander of title.  We find that *TXO* is clearly distinguishable from the present matter.  In that case, TXO filed an action for a declaratory judgment to quiet title, and the appellees counterclaimed for slander of title.  The slander in that case was the recording of a bogus deed, not an argument made during a quasi-judicial proceeding. The litigation privilege was not discussed by the Court in *TXO*, and we do not find anything in *TXO* that would support Chestnut Ridge's argument that litigation privilege immunity does not apply in slander of title claims. Further, a number of courts outside our jurisdiction have concluded that litigation privilege immunity applies to  a claim for slander of title.  *See Gorman-Dahm v. BMO Harris Bank, N.A.*, 94 N.E.3d 257 (App. Ct. 2d Dist. 2018); *Mize v. Westbrook Const. Co. of Oxford, LLC*, 146 So. 3d 344 (Miss. 2014); *Raymond v. Lyden*, 728 A.2d 124 (Me. 1999); *Pryor v. Findley*, 949 P.2d 1218 (Okla.Civ.App.1997).

[10] This Court has never found that the litigation privilege does not apply to a breach of contract claim, and we decline to do so under the facts of this case.  A number of courts outside of our jurisdiction have determined that litigation privilege immunity applies in breach of contract claims.  As noted by the court in *O'Brien & Gere Engineers, Inc. v. City of Salisbury*, 135 A.3d 473, 484 (Md. Ct. App. 2016):

> *Many other jurisdictions have approved the use of the litigation privilege as a defense to claims sounding in breach of contract. See Kimmel & Silverman, P.C. v. Porro*, 53 F.Supp.3d 325, 343-44 (D.Mass.2014) (applying Massachusetts law); *Johnson v. Johnson & Bell, Ltd.*, 379 Ill.Dec. 626, 7 N.E.3d 52, 56 (Ill.App.Ct.2014); *Vivian v. Labrucherie*, 214 Cal.App.4th 267, 153 Cal.Rptr.3d 707, 715 (2013); *Rain v. Rolls-Royce Corp.*, 626 F.3d 372, 377-78 (7th Cir.2010) (applying Indiana law); *Rickenbach v. Wells Fargo Bank, N.A.*, 635 F.Supp.2d 389, 401-02 (D.N.J.2009) (applying New Jersey law); *Crockett & Myers, Ltd. v. Napier, Fitzgerald & Kirby, LLP*, 440 F.Supp.2d 1184, 1195-97 (D.Nev.2006) (applying Nevada law); *Arts4All, Ltd. v. Hancock*, 5 A.D.3d

(continued . . .)

17

Court has recognized that two exceptions apply to the litigation privilege—claims of fraud and malicious prosecution. *Clark*, 218 W. Va. at 435, 624 S.E.2d at 872. Neither of those exceptions apply in this case.

Based on all of the foregoing, we find that Petitioners are entitled to immunity from Chestnut Ridge's counterclaim based on the litigation privilege.

---

106, 773 N.Y.S.2d 348, 351 (2004); *Kelly v. Golden*, 352 F.3d 344, 350 (8th Cir.2003) (applying Missouri law); *Ellis v. Kaye-Kibbey*, 581 F.Supp.2d 861, 879–81 (W.D.Mich.2008) (applying Michigan law); . . .

These courts have explained that the privilege would be "valueless" or "meaningless" if the opposing party could bar application of the privilege just by drafting the claim with a non-tort label. *Kimmel & Silverman, P.C.*, 53 F.Supp.3d at 343; *Johnson*, 7 N.E.3d at 56; *see Rickenbach*, 635 F.Supp.2d at 401 ("If the policy, which in defamation actions affords an absolute privilege or immunity to statements made in judicial and quasi-judicial proceedings, is really to mean anything then we must not permit its circumvention by affording an almost equally unrestricted action under a different label.") (citations and internal quotation marks omitted). Indeed, to refuse to consider applying the privilege when the claim is not labeled as a tort is to ignore the possibility that the alleged harm derives from tortious conduct. *See Rain*, 626 F.3d at 378 ("[A]ppellants' breach of contract claim is largely indistinguishable from a tort claim alleging injury flowing from statements made in a judicial proceeding. While appellants technically seek liquidated damages under the settlement agreement, any damages they suffered were caused solely by the fact that the statements were (allegedly) tortious.").

(Emphasis added, footnotes omitted).

## B. *Noerr-Pennington* Doctrine

Petitioners also assert that they are immune from Chestnut Ridge's counterclaim pursuant to the *Noerr-Pennington* doctrine. They allege that they had a right to participate in the FERC proceeding, and that this right would be "materially and unfairly compromised if Chestnut Ridge were now allowed to maintain state law claims against [Petitioners] for what they said [during the FERC proceeding]." Conversely, Chestnut Ridge asserts that Petitioners' participation in the FERC proceeding is "not the type of petitioning activity for which immunity under this doctrine is contemplated." According to Chestnut Ridge, the *Noerr-Pennington* doctrine applies mainly to antitrust claims or business torts flowing from petitioning activity, not breach of contract or slander of title claims.

Our review of this issue will consist of 1) a background discussion of the *Noerr-Pennington* doctrine, 2) an examination of whether *Noerr-Pennington* immunity may attach to a party in a FERC proceeding, and 3) if so, whether an exception to the *Noerr-Pennington* doctrine applies in this case.

This Court discussed the *Noerr-Pennington* doctrine in *Baldau v. Jonkers*, 229 W. Va. 1, 725 S.E.2d 170 (2011), stating that it "grants First Amendment immunity from suit to those engaged in petitioning activity." 229 W. Va. at 7, 725 S.E.2d at 176. Further, in *Baldau* we noted that the Supreme Court, in *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609 (1972), extended *Noerr-Pennington* immunity to citizens engaged in petitioning activities aimed at state and federal agencies,

and courts. *Id.* In *Perrine v. E.I. du Pont de Nemours & Co.*, 225 W. Va. 482, 694 S.E.2d 815 (2010), this Court noted that "[t]he *Noerr-Pennington* doctrine and the West Virginia Constitution prevent a party from predicating a cause of action upon a party's mere attempt to influence government." 225 W. Va. at 551, n.78, 694 S.E.2d at 884, n.78. The Fourth Circuit Court of Appeals has recognized that *Noerr-Pennington* immunity extends to those engaged in "the pursuit of litigation, . . . and, although originally developed in the antitrust context, the doctrine has now universally been applied to business torts." *IGEN Int'l, Inc. v. Roche Diagnostics GmbH*, 335 F.3d 303, 310 (4th Cir.2003) (citations omitted). Similarly, a number of courts have noted that *Noerr-Pennington* is not limited to federal antitrust actions, and may be invoked in actions under state and federal law.[11]

With this background in mind, we address whether a party facing a lawsuit for statements it made during a FERC proceeding may assert immunity based on *Noerr-Pennington*. To resolve this question, we examine Petitioners' purpose for appearing in the FERC proceeding, and look at other jurisdictions that have considered this issue.

As previously noted, FERC is a federal agency "with authority to render quasi-judicial decisions on the scope and application of federal energy jurisdiction."

---

[11] *See Harrah's Vicksburg Corp. v. Pennebaker,* 812 So.2d 163 (Miss.2001) (holding *Noerr-Pennington* applies to state-law antitrust and tort claims alleging restraint of trade, civil conspiracy and tortious interference); *Zeller v. Consolini*, 758 A.2d 376 (Conn. App. Ct. 2000) (applying *Noerr-Pennington* to state-law tort claim for tortious interference with a business relationship); *Gunderson v. Univ. of Alaska*, 902 P.2d 323 (Alaska 1995) (applying *Noerr-Pennington* to state-law contract claim); *Arim v. Gen. Motors Corp.*, 520 N.W.2d 695 (Mich. Ct. App. 1994) (applying *Noerr-Pennington* to state-law torts claims).

Ferrey, *The Medium Is the Message*, 35 Va. Env't L.J. at 236. It is clear that the purpose of Petitioners' intervention in the FERC proceeding was to influence a government action—that is, Petitioners sought to influence a federal agency's decision regarding the proposed storage project.

Next, we find that a number of courts outside of our jurisdiction have addressed whether a party in a FERC or similar federal regulatory proceeding may be entitled to *Noerr-Pennington* immunity. The Second Circuit affirmed a district court's ruling that *Noerr-Pennington* applied in a case involving a FERC proceeding in which one party was attempting to block another party's construction of a gas storage facility. *Bath Petroleum Storage, Inc. v. Market Hub Partners, L.P.*, 129 F.Supp.2d 578 (W.D.N.Y.), *aff'd*, 229 F.3d 1135 (2d Cir.2000), *cert. denied*, 532 U.S. 1037 (2001). In that matter, Bath Petroleum Storage, Inc. ("Bath") claimed that a business competitor made false statements before various administrative bodies, including FERC. Bath claimed that these false statements led to delays, and that these delays caused its partner to breach a lease agreement it had with Bath. The court dismissed Bath's case, ruling that the

> defendants are entitled to *Noerr[-]Pennington* immunity for any claims arising out of their activities in the administrative proceedings before FERC, DEC, and EPA. Furthermore, *since all of plaintiff's claims in this action are based upon the statements that defendants made to those agencies, those claims are all barred by the Noerr[-]Pennington doctrine.*

129 F.Supp.2d at 597 (Emphasis added).

A number of other courts have also determined that *Noerr-Pennington* immunity applies to parties facing lawsuits for statements made during FERC or similar

21

federal regulatory proceedings.[12]  Consistent with these cases, we find that since all of Chestnut Ridge's claims against Petitioners are based upon statements that Petitioners made during the FERC proceeding, those claims are barred by the *Noerr-Pennington* doctrine unless an exception to the doctrine applies.

The Supreme Court has set forth an exception to *Noerr-Pennington* immunity for "sham" litigation. *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 113 S.Ct. 1920 (1993).  In *Columbia Pictures*, the Supreme Court set forth a two-part test to analyze whether the "sham" litigation exception applies. 508 U.S. at 60.  The first part is an objective test providing that "the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Id.*  This test is straightforward, as the Court explained: "[i]f an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit

---

[12] *See Borough of Lansdale v. PP & L, Inc.,* 426 F. Supp. 2d 264 (E.D. Pa. 2006) (boroughs brought action against utility companies, alleging, among other claims, breach of contract for petitioning activity before FERC and Pennsylvania Public Utility Commission; the court rejected the "sham" exception to *Noerr-Pennington*, finding no evidence that the petitioning activity was not genuine); *TEC Cogeneration Inc. v. Florida Power & Light Co.*, 76 F.3d 1560 (11th Cir. 1996), *opinion modified on reh'g*, 86 F.3d 1028 (11th Cir. 1996) (utility's activities in lobbying county commission against construction of transmission line was constitutionally protected under *Noerr-Pennington* immunity); *Norcen Energy Res. Ltd. v. Pacific Gas & Elec. Co.*, 1994 WL 519461 (N.D. Cal. 1994) (actions of electric and natural gas utilities before state and federal commissions were protected by the *Noerr-Pennington* doctrine); *Transphase Sys., Inc. v. S. Cal. Edison Co.*, 839 F. Supp. 711 (C.D. Cal. 1993) (joint actions by utilities before state regulatory commission with respect to level of rebates paid for demand side management services protected by *Noerr-Pennington*).

is immunized under *Noerr*[.]" *Id.* The Court then described the second part of the test, "[o]nly if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation." *Id.*

In the present case, we easily conclude that Petitioners' intervention in the FERC proceeding was not objectively baseless. Petitioners asserted their position that the strata was not depleted and, therefore, Chestnut Ridge was not permitted to construct a storage facility according to the Addendum. Far from being objectively baseless, the FERC order granting Chestnut Ridge's certificate to construct a storage facility found that "[t]he parties agree that the production field is not yet depleted, and Chestnut Ridge does not dispute [Petitioners]' contention that converting a currently producing field into a storage reservoir would be inconsistent with the provision of the parties' gas storage addendum." We therefore find that the "sham" exception to *Noerr-Pennington* does not apply in this case, and conclude that Petitioners are entitled to immunity from Chestnut Ridge's counterclaim under the *Noerr-Pennington* doctrine.[13]

---

[13] We find that both the litigation privilege and *Noerr-Pennington* doctrine provide Petitioners with immunity from all of Chestnut Ridge's counterclaim because the entire lawsuit is based on statements Petitioners made during the FERC proceeding. We disagree with Chestnut Ridge's claim that the declaratory judgment portion of their counterclaim is not "presently appealable because it does not meet the criteria for a collateral order." That portion of their counterclaim involved requests for declaratory relief on two issues that concern Petitioners' intervention in the FERC proceeding: "A. Whether Chestnut Ridge complied with its obligations under the Gas Storage Addendum in obtaining a FERC certificate; and B. Whether the Smith Heirs [Petitioners] breached the Gas Storage Addendum by opposing the FERC certificate." Both of these issues plainly involve

(continued . . .)

## IV. CONCLUSION

We reverse the circuit court's November 8, 2019, order. This case is remanded to the circuit court for entry of an order granting Petitioners' motion for summary judgment.

Reversed and Remanded with Directions.

---

Petitioners' intervention in the FERC proceeding. Because we conclude that Petitioners are immune from the counterclaim under the litigation privilege and *Noerr-Pennington*, we find that Petitioners are entitled to summary judgment on the declaratory judgment portion of Chestnut Ridge's counterclaim.